**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| **FREDDIE LANDRUM and ANNIE LANDRUM as the PARENTS and ADMINISTRATORS of PHIL LANDRUM'S ESTATE,**<br><br>    **Plaintiffs,**<br><br>    **v.**<br><br>**OZARK MOTOR LINES, INC., and THE TRAVELERS INDEMNITY COMPANY,**<br><br>    **Defendants.** | **CIVIL ACTION NO.:**<br>**5:16-CV-525 (CAR)** |

## PLAINTIFFS' BRIEF IN RESPONSE TO DEFENDANT OZARK MOTOR LINES, INC.'S MOTION TO DISMISS

COME NOW Freddie and Annie Landrum, as the Parents of and Administrators of Phil Landrum's Estate, Plaintiffs in the above-captioned action, and file this their brief in response to Defendant Ozark Motor Lines, Inc.'s Motion to Dismiss, as follows:

### I. Introduction

Defendant Ozark Motor Lines, Inc. (Ozark) is the named insured of a policy with Defendant The Travelers Indemnity Company (Travelers). As such, Ozark is a necessary party to this lawsuit under Federal Rule of Civil Procedure 19. An actual controversy exists between the Landrums and Ozark under Tennessee contract law, and Ozark's status as the named insured is sufficient to state a claim against Ozark in regards to the coverage of the policy.

### II. Factual Background

Travelers entered into a commercial automobile liability policy, Y-810-7947B559-IND-14, (the IND policy) with Ozark for the policy period of August 1, 2014 to August 1,

1

2015. (Doc. 1-2 Compl. p. 4). Ozark is identified as the named insured to the policy. (Id. at 3). Plaintiffs, the Landrums, brought claims for uninsured motorist (UM) benefits under the policy related to the tragic death of their son, which were subsequently denied by Travelers. (Id. at 5). The Landrum's son, Phil Landrum, was a tractor-trailer driver employed by Ozark.  At the time of his death, Phil was acting within the course and scope of his employment with Ozark hauling a load through Jackson, Mississippi.  (Id.). He pulled his rig over on the side of the road and exited the truck to cross the highway. (Id. at 4). When he was crossing the road, a drunk driver, blew through an intersection at a high rate of speed and struck Phil Landrum. (Id.). Although the drunk driver fled the scene, he was later identified by an eyewitness who followed him and called police. (Id.). Phil Landrum was taken to a Jackson hospital, but after 3 days, he succumbed to his injuries and died. (Id. at 4). The drunk driver has only $25,000 in liability insurance coverage. (Id.). Thus to the extent that the Landrums' wrongful death claims exceed $25,000, the claim is underinsured.

Although Travelers issued two separate policies of automobile insurance to cover Ozark's fleet during the applicable time period, only one of those policies has UM coverage. (Id. at 5). Travelers contends that the TIL policy, that covers the tractor-trailers in the fleet and has no UM coverage, is the only policy under which Phil Landrum qualifies as an "insured".  (Id.). Travelers further contends that the IND policy, which has $1,000,000 in UM coverage does not apply to the truck that Phil Landrum was driving, and thus he is not an "insured" under that policy and not entitled to the available UM coverage. (Id.). Ozark has not taken a position in regards to the coverage afforded by the respective policies; however Ozark and Travelers share counsel.  The

Landrums subsequently filed this suit seeking declaratory judgment, naming Ozark and Travelers.  Ozark now contends that it is not a proper party; however, it is unclear that this juncture whether Ozark is correct.

### III. Argument & Citation of Authority

Plaintiffs have plead sufficient facts to allow the court to reasonably infer that Defendant Ozark is necessary to this action.  In order to survive a motion to dismiss, a plaintiff must plead sufficient facts, which if accepted as true, state a claim for relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). Here, Defendant Ozark contends that Plaintiffs have failed to allege facts sufficient to give rise to an actual controversy under the Declaratory Judgment Act.

The Declaratory Judgment Act is a procedural mechanism that allows the court to "declare the rights and other relations of any interested party seeking such declaration," in cases involving actual controversy. 28 U.S.C. § 2201(a); Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 240, 57 S. Ct. 461, 463, 81 L. Ed. 617 (1937). The Act distinguishes and prohibits cases that are based on a hypothetical or a dispute involving an abstract character or scenario; instead, the dispute must be definite and concrete touching the legal relations of the parties have adverse legal interests. Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 240, 57 S. Ct. 461, 464, 81 L. Ed. 617 (1937). "The difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if not impossible, to fashion a precise test for determining in every case whether there is such a controversy exists. The question is

whether the facts as alleged, under the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Maryland Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273, 61 S. Ct. 510, 512, 85 L. Ed. 826 (1941). Thus the court must consider (1) the nature of the controversy, (2) the relation and interests of the parties, (3) and the relief sought in the instant case. Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240 (1937).

Case and actual controversy references the type of "cases and controversies" that are justifiable under Article III of the United States Constitution. Id. The sole requirement for federal court jurisdiction under both provisions (the Declaratory Judgment Act and Article III) is the existence of an "actual controversy." 28 U.S.C. § 2201(a). To determine if an actual controversy is present, courts look at whether there is "standing and ripeness, by showing under 'all the circumstances' an actual or imminent injury caused by the defendant that can be redressed by judicial relief and that it is of 'sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" MedImmune, Inc. v. Genetech Inc., 549 U.S. 118, 126 (2007).

In its brief Ozark argues that FRCP 19 is "particularly germane" when considering whether an actual controversy exists. Def. Brief n. 3. Pursuant to Rule 19: "[a] person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (1) in that person's absence, the court cannot accord complete relief among existing parties; or (2) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or

impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." When evaluating a motion to dismiss [t]he decision whether to dismiss must be based on factors varying with the different cases, some such factors being substantive, some procedural, some compelling by themselves, and some subject to balancing against opposing interests. Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 118–19, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968).

Here, Ozark's interests must be evaluated pursuant to substantive state law. Under Tennessee law, the substantive rights of parties to an insurance contract are governed by the laws of the state intended by the parties[1]. Standard Fire Ins. Co. v. Chester–O'Donley & Assoc., 972 S.W.2d 1, 5 (Tenn.Ct.App.1998).  Tennessee courts have held that the parties to a written contract are necessary parties, concluding that "all contracting parties that have a justifiable dispute are necessary parties." Byrn, 1991 WL 7806 at *5. Furthermore, Tennessee courts have held that insurance policies are viewed as personal contracts between the insurer and the insured, and that as such, both are subject to ordinary rules of contract. Am. Justice Ins. Reciprocal v. Hutchison, 15 S.W.3d 811, 814 (Tenn.2000); see Commercial Cas. Ins. Co. v. Columbia Cas. Co., 22 Tenn.App. 656, 660 (1938).  Additionally, jurisdictions that follow the Uniform Declaratory Judgements Act have determined that in actions regarding the construction of contracts, the parties to the contract are necessary parties. See Garnick v. Serewitch, 39 N.J.Super. 486, 499 (Ch. Div.1956) ("[a] contract may not be construed in the

---

[1] Absent an enforceable choice of law clause in the policy, the parties are presumed to have intended to apply the laws of the state in which the contract was entered. Id. Here, because the insurance contract between Ozark and Travelers was signed and delivered in Tennessee, Tennessee substantive law controls.

absence of a party thereto"); <u>Wells v. Bank of Nevada</u>, 90 Nev. 192, 197 (1974)("[c]ontroversies arising under an agreement properly are to be determined and settled by parties to the agreement or their assigns, that is, by those who have legal rights or duties thereunder."); <u>Nat'l Auto. Ins. Co. v. Vaughn</u>, 213 Ga. 806, 806 (1958) (all persons interested in the contract should be joined to properly adjudicate the liability or non-liability of the insurer).

      Here, Ozark argues that it has no interest in the suit and no legal relationship exists between the parties. Ozark may, in fact, be correct in its contention. However, there is no way at this juncture, without the benefit of discovery, that Ozark's interests, or lack thereof, can be determined. Ozark is the named insured under the policy of insurance at issue in this case; Ozark and Travelers are the only two parties to the contract of insurance at issue; Ozark and its employees and agents purchased the policies issued by Travelers; Ozark was the employer and principal of Phil Landrum at the time of his death; Phil Landrum was acting within the scope of his employment at the time of his death; Ozark was the owner of the truck Phil Landrum was operating when he died; Ozark and Travelers share counsel, and Travelers clearly has an interest in the litigation.

      An entity shall be joined as a party if complete relief cannot be granted without its presence, and Ozark cannot be removed from the action without impeding the Landrums' right to complete relief. Although Ozark maintains that there is no legal relationship between itself and the Plaintiffs, such a position ignores that fact that Ozark employed Phil Landrum and that Plaintiffs are bringing claims on behalf of themselves and Phil Landrum's estate. Here, Ozark is the only party who is a named insured.

Ozark is the only party that entered into a contractual relationship and obligation with Travelers, and as such Ozark may be a necessary and proper party.

**IV. Conclusion**

Based on the foregoing reasons, this Court should deny Ozark's Motion to Dismiss.

This 18th day of January, 2017.

/s/ Caroline W. Herrington
**CAROLINE W. HERRINGTON**
Georgia Bar No. 153008

ADAMS, JORDAN & HERRINGTON, P.C.
Suite 1250, Fickling & Co. Building
577 Mulberry Street
P.O. Box 928
Macon, GA  31202
(478) 743-2159

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day served a copy of the foregoing **PLAINTIFFS'**

**BRIEF IN RESPONSE TO DEFENDANT OZARK MOTOR LINES, INC.'S MOTION TO**

**DISMISS** upon the counsel or parties listed below via the Court's CM/ECF system:

Seth M. Friedman, Esq.

Seth.Friedman@lewisbrisbois.com


Respectfully submitted, this 18th day of January, 2017

/s/ Caroline W. Herrington
Georgia Bar No. 153008
Counsel for Plaintiffs

Adams, Jordan & Herrington, PC
Fickling & Co. Building
577 Mulberry Street, Suite 1250
P.O. Box 928
Macon, Georgia 31202-0928
(p) 478-743-2159

cherrington@adamsjordan.com